IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARK DAVENPORT, # N-80706, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 13-cv-484-MJR |
| ) | |
| NURSE GREEN, ) | |
| 3-11 MEDICAL STAFF, ) | |
| WEXFORD HEALTH SOURCES, INC., ) | |
| and RANDY J. DAVIS, ) | |
| ) | |
| Defendants. ) | |

# MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Plaintiff, currently incarcerated at Pinckneyville Correctional Center ("Pinckneyville"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is serving an 80-year sentence for murder and a 30-year sentence for armed robbery. He claims that Defendants were deliberately indifferent to his serious medical condition.

More specifically, Plaintiff claims that he suffers from a chronic skin allergy, which on July 12, 2011, caused areas of his scrotum to spontaneously bleed. Plaintiff notified the guard on duty at 9:30 p.m. that he needed medical attention, showing him the bleeding area and "a substantial amount of bloody tissue" (Doc. 1, p. 9). This guard (Contes) said he would alert the sergeant, but nobody came to examine Plaintiff.

The bleeding continued, and Plaintiff again requested help from Officer Mendel, who performed the 11:00 p.m. count. Plaintiff showed Mendel his bloody tissues and scrotum. Officer Mendel left, returning some time later to ask Plaintiff if his condition was "life threatening" (Doc. 1, p. 10). Plaintiff responded that he was lightheaded, in pain, and "any

substantial amount of blood loss is life threatening." *Id.* Officer Mendel left, and no medical staff came to see Plaintiff. In an effort to stop the bleeding, Plaintiff tied a string around his scrotum, causing further pain and numbness. He remained standing at his cell door waiting for medical attention.

Some hours later, Defendant Nurse Green walked past Plaintiff's cell after passing out medications. He called out to her and told her he had been bleeding from his scrotum for several hours, was lightheaded, and in pain (Doc. 1, p. 11). Defendant Green responded that Plaintiff was on the doctor's call line for tomorrow, and he would receive a pass. Plaintiff told Defendant Green about the string he had tied around his scrotum, and asked if he should just let it bleed. He also said he had been prescribed medication for the chronic allergy which caused the bleeding, and showed Defendant Green his prescription box. She repeated that he would get a pass to see the doctor, and he should take his prescription box with him on this visit.

Plaintiff continued to feel pain, numbness, and lightheadedness for the next few hours, and went to breakfast in this condition. During breakfast, he asked Officer Mendel whether he had reported Plaintiff's problem to the nurse the night before. Officer Mendel confirmed that he had done so, and remarked that Defendant Green was new to her job (Doc. 1, p. 12).

While Plaintiff waited to see the doctor, he attempted to cauterize the bleeding areas with a heated paper clip. Plaintiff was called to see Dr. Shah on July 14, 2011, and learned that this visit was to get results of an allergy test, and had not been scheduled in response to Plaintiff's July 12, 2011, request for help for his bleeding. He argues that Nurse Green deliberately failed in her duty to provide him with emergency medical attention or to notify the

doctor of his medical needs. Further, Defendant Wexford Health Sources, Inc. ("Wexford"), as her employer, should be liable for Defendant Green's errors due to their failure to properly train her (Doc. 1, p. 15).

Plaintiff later confirmed with the officers on duty the night of July 12, 2011, that they did inform the medical staff of Plaintiff's request for help (Doc. 1, pp. 15-16). Plaintiff concludes that the nurses on duty during the 3:00-11:00 p.m. shift were all deliberately indifferent to his medical needs, because none of them responded to his call for help as relayed by the guards. Further, Defendant Davis (Pinckneyville Warden) should be held liable for the lack of emergency medical response, because no "buzzers" are installed in the segregation cell where Plaintiff was housed. As a result, Plaintiff and other inmates on that wing cannot directly summon help in a medical emergency, but must either depend on fellow inmates to alert the guards by beating on cell doors, or wait to relay their request to the guards when they pass by from time to time (Doc. 1, p. 17). All other cellblocks are equipped with buzzers.

Plaintiff seeks an injunction requiring Defendant Davis to install buzzers in all cells in the segregation unit, and money damages.

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant. After fully considering the allegations in Plaintiff's complaint, the Court concludes that this action is subject to summary dismissal for failure to state a constitutional claim.

Deliberate indifference to serious medical needs of prisoners may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104

(1976); *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). This encompasses a broader range of conduct than intentional denial of necessary medical treatment, but it stops short of "negligen[ce] in diagnosing or treating a medical condition." *Estelle,* 429 U.S. at 106. *See also Sanville v. McCaughtry,* 266 F.3d 724, 734 (7th Cir. 2001). Deliberate indifference, like any Eighth Amendment claim, involves a two-part test. "The plaintiff must show that (1) the medical condition was objectively serious, and (2) the state officials acted with deliberate indifference to his medical needs, which is a subjective standard." *Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000). An inmate's dissatisfaction with the medical care he receives in prison does not necessarily state a constitutional claim for deliberate indifference to medical needs, even if the quality of care was substandard to the point of negligence or malpractice. *Estelle*, 429 U.S. at 106; *Sanville,* 266 F.3d at 734; *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996).

In Plaintiff's case, the persistent bleeding was certainly a medical condition that indicated a need for some attention.[1] However, the gist of Plaintiff's complaint is that Defendant Green did not give him immediate medical care for what he considered to be an emergency situation. It is not obvious that his bleeding or other symptoms rose to the level of an "objectively serious" medical condition that called for *immediate* treatment. *See Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997) (listing criteria that indicate a serious medical need: (1) where failure to treat the condition could "result in further significant injury or the unnecessary and wanton infliction of pain;" (2) "[e]xistence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment;" (3) "presence of a medical condition that significantly affects an individual's daily activities;" or (4) "the existence

---

[1] Plaintiff's complaint states that he had in fact received ongoing medical care for the skin allergy that affected his scrotum, which was first diagnosed at Stateville Correctional Center, his previous prison. This included being prescribed a "soy free diet," prescription medication, other "continued treatments," and, apparently, the allergy test he was given prior to the July 12 incident (Doc. 1, pp. 12, 14). The reason Plaintiff was issued a pass to see the doctor on July 14 was to obtain the results of this allergy test.

of chronic and substantial pain.").

Certainly, bleeding usually requires some medical care. However, the amount and type of bleeding dictates what treatment may be needed and when. This may range from basic first aid for a superficial wound, to emergency crisis care for a life-threatening severed artery. Medical judgment comes into play to determine what intervention is called for and how soon a patient must be treated, with regard to bleeding as well as Plaintiff's other symptoms. Plaintiff's complaint indicates that he did ultimately receive treatment when he saw the doctor on July 14, 2011. Here, the key question as to Defendant Green is whether she was deliberately indifferent on July 13, when she decided that Plaintiff's condition could be appropriately handled by the doctor during sick call the following day.

To state a claim for deliberate indifference in the denial or delay of medical care, the complaint must indicate a defendant had actual knowledge of, or reckless disregard for, a *substantial* risk of harm. *See Chavez v. Cady*, 207 F.3d 901, 906 (7th Cir. 2000). Plaintiff informed Defendant Green of his condition, thus establishing that she was aware of his symptoms. However, the question of whether Plaintiff faced a *substantial* risk of harm given these facts, is a matter for sound medical judgment. It is well established that a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). *See also Guzman v. Sheahan*, 495 F.3d 852, 857 (7th Cir. 2007) (a prison official does not violate the Constitution merely by failing to choose the best course of action); *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) (courts will not take sides in disagreements with medical personnel's judgments or techniques). In the instant case, Defendant Green's decision that Plaintiff's condition was not serious enough to require immediate care was, at worst, an

example of malpractice. As such, her actions do not support a civil rights claim.

The Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). A difference of opinion between medical professionals concerning the treatment of an inmate will not support a claim for deliberate indifference. *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). Likewise, an inmate's disagreement with a medical provider's course of treatment does not state a constitutional claim. *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003). In this case, the difference of opinion is between Defendant Green, a nurse, and Plaintiff, who gives no indication that he has any professional medical training. The Seventh Circuit instructs that a court "must remain sensitive to the line between malpractice and treatment that is so far out of bounds that it was blatantly inappropriate or not even based on medical judgment . . . this is a high standard." *King v. Kramer,* 680 F.3d 1013, 1019 (7th Cir. 2012) (internal citations and quotations omitted). Plaintiff's claim against Defendant Green does not meet this high standard, particularly in light of the fact that Plaintiff had been receiving ongoing treatment for his condition.

Plaintiff's argument that Defendant Green failed to follow administrative rules on emergency care, or the nurses code of ethics (Doc. 1, pp. 12-13), is of no consequence. A federal court does not enforce state law or regulations, nor does a violation of state rules establish a constitutional claim. *Archie v. City of Racine,* 847 F.2d 1211, 1217 (7th Cir. 1988) (en banc), *cert. denied,* 489 U.S. 1065 (1989). The claim against Defendant Green shall be dismissed.

Plaintiff's claim that the unnamed medical staff who worked the 3:00-11:00 p.m. shift (when he first requested medical assistance from the guards), also fails. Plaintiff assumes they were told about his condition because the guards said they had passed on his concerns.

Taking this assumption as true, the 3:00-11:00 p.m. shift medical staff, like Defendant Green, were entitled to exercise their medical judgment as to Plaintiff's need for immediate treatment. For the same reasons outlined above, these Defendants' actions do not amount to a constitutional violation.

Finally, because Defendant Green's conduct did not infringe on his constitutional rights, Plaintiff cannot maintain a claim against her employer Defendant Wexford. *See Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (corporation can be held liable for deliberate indifference only if it had a policy or practice that caused a constitutional violation). And as to Defendant Warden Davis, the Court cannot discern any connection between the lack of an emergency buzzer in Plaintiff's cell and Defendant Green's decision on how to respond to Plaintiff's medical condition. There is no indication that the absence of buzzers in Plaintiff's cellblock amounts to anything more than negligence, at worst. A defendant can never be held liable under § 1983 for negligence. *Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Zarnes v. Rhodes*, 64 F.3d 285, 290 (7th Cir. 1995).

**Pending Motion**

Plaintiff's motion to appoint counsel (Doc. 2) and motion for service at government expense (Doc. 4) are **DENIED AS MOOT.**

**Disposition**

For the reasons stated above, this civil rights action is **DISMISSED with prejudice** for failure to state a constitutional claim upon which relief may be granted.

Plaintiff is **ADVISED** that this dismissal shall count as one of his three allotted "strikes" under the provisions of 28 U.S.C. § 1915(g). Plaintiff's obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains

due and payable. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

If Plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within thirty days of the entry of judgment. FED. R. APP. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If Plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch,* 133 F.3d 464, 467 (7th Cir. 1998). Moreover, if the appeal is found to be nonmeritorious, Plaintiff may also incur another "strike." A timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline.

The Clerk shall **CLOSE THIS CASE** and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: June 24, 2013**

s/ MICHAEL J. REAGAN
United States District Judge